# Illinois Official Reports

## Appellate Court

---

### *Safety-Kleen Systems, Inc. v. Department of Revenue*, 2020 IL App (1st) 191078

---

| | |
|---|---|
| Appellate Court Caption | SAFETY-KLEEN SYSTEMS, INC., Petitioner, v. THE DEPARTMENT OF REVENUE and THE ILLINOIS INDEPENDENT TAX TRIBUNAL, Respondents. |
| District & No. | First District, Second Division<br>No. 1-19-1078 |
| Filed | April 28, 2020 |
| Decision Under Review | Petition for review of order of the Illinois Independent Tax Tribunal, No. 16-TT-167. |
| Judgment | Affirmed. |
| Counsel on Appeal | Brian L. Browdy, of Ryan Law Firm, PLLC, of Chicago, and Josh Veith and Doug Sigel, of Ryan Law Firm, PLLC, of Austin, Texas, for petitioner.<br><br>Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Priyanka Gupta, Assistant Attorney General, of counsel), for respondents. |

Panel

JUSTICE PUCINSKI delivered the judgment of the court, with opinion.
Presiding Justice Fitzgerald Smith and Justice Lavin concurred in the judgment and opinion.

**OPINION**

¶ 1        This appeal stems from proceedings before the Illinois Independent Tax Tribunal, in which petitioner Safety-Kleen Systems, Inc. (Safety-Kleen), contested the Illinois Department of Revenue's (Department) assessment of use tax on Safety-Kleen's unused, or "virgin," cleaning solvent under the Use Tax Act (Act) (35 ILCS 105/1 *et seq.* (West 2010)). The tax tribunal entered summary judgment in favor of the Department and against Safety-Kleen, finding that the Act's temporary storage exemption did not apply to Safety-Kleen's virgin solvent. See 35 ILCS 105/3-55(e) (West 2010). On appeal, Safety-Kleen asserts that the tax tribunal erred in granting the Department summary judgment and denying Safety-Kleen summary judgment, where the tax tribunal misapplied our holding in *Shared Imaging, LLC v. Hamer*, 2017 IL App (1st) 152817, and where the virgin solvent returned to Illinois as a different product after its sole use outside of Illinois. We affirm.

¶ 2                              BACKGROUND

¶ 3        On August 22, 2016, Safety-Kleen filed a petition before the tax tribunal alleging in relevant part that the Department erred in assessing use tax against its virgin solvent purchases. In the petition, Safety-Kleen stated that it provides "solvent parts washers" and "recycled solvent" to commercial customers throughout North America. As part of its services, Safety-Kleen regularly drains used solvent from its customers' parts washers and replenishes the washers with recycled solvent. Included in this recycled solvent is the virgin solvent at issue, which Safety-Kleen purchases from out-of-state retailers and blends with the recycled solvent "to ensure an adequate supply of solvent."

¶ 4        Safety-Kleen also alleged that during the audit period of January 1, 2010, through December 31, 2012, Safety-Kleen remitted Illinois use tax on purchases of virgin solvent. The Department completed a reconciliation of use tax and gave Safety-Kleen credit for use tax accrued on virgin solvent purchases. Later, however, the Department audited Safety-Kleen and concluded that Safety-Kleen owed Illinois use tax on multiple items, including virgin solvent. Safety-Kleen requested an audit adjustment from the Department's informal conference board. The informal conference board denied Safety-Kleen's request and concluded that " 'the recycling of solvents is considered a taxable use in Illinois.' "

¶ 5        Safety-Kleen asserted in its petition that the Department erred in proposing to assess use tax on the virgin solvent purchases, as the virgin solvent "was received and stored in Illinois and subsequently distributed and use[d] outside of Illinois." Safety-Kleen claimed it did not subject the virgin solvent to its "intended use" until the solvent reached its customers' locations "both within and outside of Illinois." Once the solvent was used and returned to Illinois by Safety-Kleen, the solvent was allegedly a "substantially different product" because it was "contaminated with debris and foreign chemicals that must be removed through the recycling process" before further use.

¶ 6 In its answer to Safety-Kleen's petition, the Department denied that the virgin solvent was "first subjected to its intended use" when used in the parts washers at Safety-Kleen's customers' locations. The Department also denied that the used solvent was a "substantially different product" than the virgin solvent.

¶ 7 The parties submitted cross-motions for summary judgment.

¶ 8 Safety-Kleen's summary judgment motion argued that 88.46% of the out-of-state virgin solvent purchases qualified for the temporary storage exemption to the Illinois use tax because the virgin solvent was (1) acquired outside of Illinois, (2) stored in Illinois temporarily, and (3) used solely outside of Illinois. Safety-Kleen reiterated its theory that storage of the used solvent in Illinois did not constitute a "use" of the virgin solvent, since virgin and used solvent were different products.

¶ 9 The Department's motion for summary judgment asserted that based on *Shared Imaging*, Safety-Kleen's virgin solvent lost the temporary storage exemption once it was returned to Illinois for further storage after its initial post-purchase storage. See *id.* The Department refuted Safety-Kleen's claim that virgin and used solvent were different properties entirely, arguing that "at least some of the original virgin solvent returns multiple times to Illinois, albeit in contaminated or used form." The Department opined that "[c]lean or contaminated, solvent is still solvent."

¶ 10 The parties' motions both contained a stipulation of facts, which stated in relevant part:

"17. Petitioner provides its customers with a regular, scheduled service to drain 'used solvent' from its customers' parts washers and then replenish those washers with 'recycled solvent.'

18. 'Used solvent' is solvent that has been subjected to its intended use in parts washers to clean and degrease metal parts and tools.

19. 'Used solvent' contains all of the oils, chemicals, liquids, and debris that were previously attached to the metal parts or tools before the solvent was used to clean them.

20. 'Used solvent' does not have the same cleaning capability as 'virgin' or 'recycled' solvent.

21. 'Recycled solvent' is usable, clean solvent that has been refined through distillation from 'used solvent.'

22. 'Virgin solvent' is a solvent that has not diluted any solute yet (*i.e.*, a substance that has not absorbed or dissolved away any other substance).

23. 'Recycled solvent' has the same chemical and physical properties, as well as the same commercial value, as 'virgin solvent.' "

¶ 11 The stipulations continued to explain that after Safety-Kleen drains used solvent from customers, it transports the used solvent to a recycling center in Dolton, Illinois. There, the used solvent is stored in tanks before it is recycled. The used solvent from each respective customer is not separated but rather is often mixed together. The recycling of used solvent is primarily achieved through "fractional distillation," which is "the separation of a mixture into its component parts, or fractions, such as in separating chemical compounds by their boiling points by heating them to a temperature at which one or more fractions of the compound will vaporize." Once used solvent is recycled, Safety-Kleen "blends virgin solvent with recycled solvent in order to ensure [Safety-Kleen] maintains an adequate supply of solvent necessary

for replenishing customers' solvent parts' washers." "Solvent can be recycled many times before it is permanently exhausted."

¶ 12     The stipulations also stated that "at least some of the 88.46% of virgin solvent, as well as some of the 88.46% of the recycled solvent, sent out of state is returned" to the Dolton recycling center. However, Safety-Kleen could not identify the exact amount of virgin and recycled solvent that is returned for recycling.

¶ 13     The alleged stipulations explained the differences between used and virgin solvent, and the similarities between virgin solvent and recycled solvent, as follows:

"35. Used solvent must be recycled in order to be reused in Petitioner's parts washers because used solvent and recycled or virgin solvent are substantially different.

36. First and foremost, used solvent does not have the cleaning capability of virgin or recycled solvent.

37. Second, virgin and recycled solvent are clear, colorless, or green liquid with a mild hydrocarbon odor; used solvent is a dark, opaque liquid with an odor representing the many residues contained within.

38. Third, virgin and recycled solvent consist of 100% hydrotreated light petroleum distillates; used solvents contain all of the oils, chemicals, liquids, and debris that were formerly attached to the metal parts or tools that the solvent cleaned from them.

39. Fourth, virgin and recycled solvent have very precise temperature reactions.

40. Specifically, virgin and recycled solvent boil at 310°F and have flash points of 105°F and auto-ignition temperatures of 410°F.

41. Used solvent has unpredictable temperature reactions due to the presence of various oils, chemicals, liquids, and debris.

42. Fifth, virgin and recycled solvent have a pH level of 7; used solvent has an unpredictable level of pH due to the presence of various oils, chemicals, liquids, and debris.

43. Sixth, virgin and recycled solvent have consistent commercial values; used solvent has no commercial value.

44. Seventh, virgin and recycled solvent are not subject to regulation under the Resource Conservation and Recovery Act ('RCRA'), 42 U.S.C. § 6901 *et seq*; used solvent is a hazardous waste that is regulated under the RCRA.

45. Eighth, Petitioner's virgin and recycled solvent can be transported by tanker trucks bearing placards that state the truck is transporting virgin or recycled solvent; Petitioner's tanker trucks transporting used solvent must bear placards stating that the truck is transporting 'hazardous waste.' "

The parties also stipulated that the total use tax assessment on Safety-Kleen's virgin solvent purchases was $1,162,335.43. However, because "88.46% of the virgin solvent was shipped out-of-state for its intended use," Safety-Kleen contended that the assessment should be reduced by 88.46% down to $134,133.51.

¶ 14     On September 6, 2018, the tax tribunal granted the Department's motion for summary judgment and denied Safety-Kleen's motion. The tax tribunal cited *Shared Imaging* in holding that "the temporary storage exemption can apply only once" and so "if the property is returned to Illinois for further storage the exemption is lost." The tax tribunal also observed that Safety-

Kleen cited no legal authority supporting its position that "the return of its property in a different form allows it to reset the clock on the temporary storage exemption." The tax tribunal noted that it "does seem reasonable that at some point property may be so transformed out of state that when returned to Illinois it could claim its own temporary storage exemption." Nonetheless, the tax tribunal was not convinced that such a transformation had occurred, as the intended use of the virgin solvent does not "fundamentally change" once it is used and recycled for further use.

¶ 15   On May 1, 2019, the tax tribunal entered a final order affirming the Department's assessment on Safety-Kleen's solvent and entered judgment in favor of the Department and against Safety-Kleen in the amount of $1,028,201.92, plus statutory interest. This appeal followed.

¶ 16                                    ANALYSIS

¶ 17   On appeal, Safety-Kleen asserts that the tax tribunal erred in concluding that the temporary storage exemption of the Act did not apply to its virgin solvent, as the solvent was used outside of Illinois and returned in-state as an entirely different product. Thus, according to Safety-Kleen, the virgin solvent was only temporarily stored once in Illinois, and our holding in *Shared Imaging* does not apply. The Department responds that strictly construing the temporary storage exemption against Safety-Kleen, we must conclude the exemption does not apply because the virgin solvent was stored in Illinois multiple times, regardless of the changes the virgin solvent underwent.

¶ 18   Tax exemptions are strictly construed, and we must resolve any doubts regarding an exemption's applicability in favor of taxation. *Horsehead Corp. v. Department of Revenue*, 2019 IL 124155, ¶ 42. "Under Illinois law, taxation is the rule. Tax exemption is the exception." (Internal quotation marks omitted.) *Oswald v. Hamer*, 2018 IL 122203, ¶ 12. "Provisions granting tax exemptions *** must come not only within the terms of the statute but also the authority given by the constitution." (Internal quotation marks omitted.) *City of Chicago v. Illinois Department of Revenue*, 147 Ill. 2d 484, 491 (1992). "Courts have no power to create exemption from taxation by judicial construction ***." *Id.* The party seeking tax exemption bears "[t]he burden of proving the right to exemption," and in determining whether the property is subject to the exemption, we must construe all facts and debatable questions in favor of taxation. (Internal quotation marks omitted.) *Eden Retirement Center, Inc. v. Department of Revenue*, 213 Ill. 2d 273, 289 (2004).

¶ 19   Section 3 of the Act provides for the imposition of a tax on "the privilege of using in this State tangible personal property purchased at retail from a retailer." 35 ILCS 105/3 (West 2010). The Act defines "use" as "the exercise by any person of any right or power over tangible personal property incident to the ownership of that property." 35 ILCS 105/2 (West 2008). The purpose of this tax is to prevent buyers from avoiding retailers' occupation tax by making out-of-state purchases and "to protect Illinois retailers against diversion of business to out-of-state retailers." *Irwin Industrial Tool Co. v. Department of Revenue*, 238 Ill. 2d 332, 340 (2010).

¶ 20   Section 3-55 of the Act provides for a "[m]ultistate exemption" to use tax in order to "prevent actual or likely multistate taxation." 35 ILCS 105/3-55 (West 2010). This section includes a temporary storage exemption that applies to the following use of tangible personal property:

"The temporary storage, in this State, of tangible personal property that is acquired outside this State and that, after being brought into this State and stored here temporarily, is used solely outside this State or is physically attached to or incorporated into other tangible personal property that is used solely outside this State, or is altered by converting, fabricating, manufacturing, printing, processing, or shaping, and, as altered, is used solely outside this State." 35 ILCS 105/3-55(e) (West 2010).

This exemption applies when the property is "(1) acquired outside the State; (2) is stored temporarily; and (3) is used, either in the form in which it came into Illinois or as altered, solely outside this State." *Nutrition Headquarters, Inc. v. Department of Revenue*, 106 Ill. 2d 58, 61 (1985).

¶ 21 "When parties file cross-motions for summary judgment, they mutually agree that there are no genuine issues of material fact and that only a question of law is involved." *Jones v. Municipal Employees' Annuity & Benefits Fund*, 2016 IL 119618, ¶ 26. In this instance, our review is *de novo*. *Id.*; see also *Horsehead Corp. v. Department of Revenue*, 2019 IL 124155, ¶ 27 ("A conclusion on a question of law by the tax tribunal is reviewed *de novo*.").

¶ 22 Initially, we note that the parties agree the virgin solvent was acquired outside of Illinois and therefore qualifies for the first of the temporary storage exemption's three elements. They also agree that, under our holding in *Shared Imaging*, property does not qualify for the temporary storage exemption where it has been temporarily stored in Illinois, shipped out-of-state, and then returned to Illinois for further storage. *Shared Imaging, LLC*, 2017 IL App (1st) 152817. The parties additionally do not dispute whether the virgin solvent's first storage in Illinois, before it is used out-of-state in customers' parts washers, constitutes a use. The issue before us is limited to whether the virgin solvent is used in Illinois for purposes of the Act when it is altered by its out-of-state use and, in a different form, returned to Illinois and stored again.

¶ 23 Safety-Kleen's theory is essentially that the virgin solvent's use in parts washers so fundamentally changes the solvent on a "molecular level" that it cannot even be deemed the same property afterwards. In support of this theory, the record contains a cursory outline of the science underlying the virgin solvent's apparent transformations. From the facts before us, however, it does not appear that the actual matter that makes up the virgin solvent is *completely lost* when it is used in parts washers. Rather, as the parties have stipulated, the solvent simply picks up the "oils, chemicals, liquids, and debris" from the materials which it is used to clean.

¶ 24 With this in mind, we consider the parties' dispute regarding the applicability of *Shared Imaging, LLC*, 2017 IL App (1st) 152817. In *Shared Imaging*, the petitioner leased medical equipment units to customers within and outside of Illinois. *Id.* ¶ 4. The Department assessed use tax against certain units, and the petitioner filed suit against the Department and its director, as well as the Treasurer of the State of Illinois, alleging that the units qualified for the temporary storage exemption. *Id.* ¶¶ 5-6. The trial court granted the defendants summary judgment on the issue. *Id.* ¶ 8. The petitioner asserted on appeal that the units qualified for the temporary storage exemption because they were purchased outside of Illinois, temporarily stored in Illinois, and leased exclusively outside of Illinois. *Id.* ¶ 31. After leasing these units, the units would return to Illinois, where they would remain until they were leased outside Illinois again. *Id.* ¶ 37.

¶ 25 This court in *Shared Imaging* affirmed the trial court's ruling and found in part that certain units did not qualify for the temporary storage exemption. *Id.* ¶ 46. We noted it was

uncontested that these units were acquired outside of Illinois, and we found that the units' initial storage in Illinois for 47 days was temporary. *Id.* ¶¶ 31, 33. Nonetheless, we concluded that the units were not used solely out-of-state, as they were continuously stored and maintained within Illinois, an act which we found constituted an "exercise of rights and power over the property that belongs only to the owner of the property" and therefore fell within the Act's definition of "use." *Id.* ¶ 38 (citing 35 ILCS 105/2 (West 2008)).

¶ 26    The petitioner in *Shared Imaging* asserted that even if the units returned to Illinois, they were returned only to be temporarily stored once again, which is exempted under the temporary storage exemption. *Id.* ¶ 43. We rejected this argument, and stated:

"Shared Imaging's argument that there is no limit on the number of times a taxpayer may temporarily store property in Illinois is incorrect: the temporary storage exemption clearly places that limit on the taxpayer by providing that after the initial post-purchase temporary storage of property, that property must be used '*solely*' outside of Illinois. Given that the term 'use' includes storage, the return of property to Illinois—even if only for storage—constitutes use occurring inside Illinois. Therefore, although the temporary storage exemption permits the initial post-purchase storage of property, it prohibits the further storage (*i.e.*, use) of property in Illinois absent the payment of the use tax." (Emphasis in original.) *Id.*

This court further explained that if the petitioner "returns the property to Illinois and engages in the same activity again, the exemption no longer applies." *Id.* ¶ 44. In summarizing our conclusion, we stated:

"[B]ecause storage qualifies as a use of tangible personal property under the Act and because the return of [the medical equipment units] to Illinois for additional storage defeats the temporary storage exemption requirement that the property be used solely outside of Illinois after its initial post-purchase storage in Illinois, we conclude that the temporary storage exemption did not apply to [the units]." *Id.* ¶ 46.

We therefore affirmed the Department's decision to assess use tax on the units. *Id.*

¶ 27    We find *Shared Imaging* applicable to this case. As the petitioner in *Shared Imaging* did, Safety-Kleen purchased the virgin solvent out-of-state and initially stored the solvent within Illinois before sending it to out-of-state customers. Also as the petitioner in *Shared Imaging* did, Safety-Kleen then returned the solvent to Illinois after its out-of-state use, stored the solvent again, and eventually "engage[d] in the same activity" with the once-virgin solvent by sending it to customers' parts washers. *Id.* ¶ 44. Because the solvent was stored in Illinois after its "initial post-purchase storage in Illinois," Safety-Kleen cannot claim that the temporary storage exemption applies. *Id.* ¶ 46.

¶ 28    Safety-Kleen claims that *Shared Imaging* is distinguishable because in *Shared Imaging*, the exact same medical equipment units that left Illinois were returned to Illinois for storage after their out-of-state use. In contrast, Safety-Kleen claims that its virgin solvent becomes "new tangible personal property" after its initial out-of-state use because (1) it obtains a new color and odor; (2) it contains " 'oils, chemicals, liquids, and debris that were previously attached to the metal parts or tools before the solvent was used to clean them' "; (3) it is legally different, as trucks carrying used solvent must bear a placard stating the truck is transporting hazardous waste; and (4) used solvent lacks the cleaning capabilities of virgin solvent.

¶ 29    We find Safety-Kleen's argument unconvincing. Even if we were to assume that virgin solvent and used solvent are substantially different products, the used solvent is ultimately recycled and used alongside virgin solvent for "the same activity again." *Shared Imaging, LLC*, 2017 IL App (1st) 152817, ¶ 44. The undisputed facts in the record show that Safety-Kleen essentially (1) purchases out-of-state virgin solvent, (2) blends the virgin solvent with recycled solvent (Blend A), (3) ships Blend A to out-of-state customers, (4) picks up Blend A after its use and returns it to Illinois, (5) converts Blend A to reusable recycled solvent, (6) blends this newly recycled Blend A with more virgin solvent (Blend B), and (7) sends Blend B out-of-state to be used in the exact same way as Blend A. The stipulated facts also showed that Safety-Kleen's solvent can undergo multiple rounds of storage and recycling before it becomes "permanently exhausted." Regardless of how much the virgin solvent is altered when it is used to clean customers' equipment, the solvent is nonetheless returned to Illinois in *some form*, restored, and subjected to the exact same activity when it is sent to customers.

¶ 30    Significantly, as the parties' stipulated facts even emphasize, virgin solvent and recycled solvent carry several of the same characteristics. Namely, according to the stipulated facts on record, both virgin and recycled solvent (1) have the same cleaning capabilities; (2) are clear, colorless, or green-colored with a "mild hydrocarbon odor"; (3) "consist of 100% hydrotreated light petroleum distillates"; (4) "have very precise temperature reactions"; (5) boil at 310°F; (6) have a pH level of 7; (7) "have consistent commercial values"; and (8) do not have to be transported by a tanker truck bearing a placard that states the truck is transporting hazardous waste. We find no basis to hold that used solvent is an entirely different property than virgin solvent when, through recycling, the used solvent regains the characteristics of virgin solvent.

¶ 31    In its reply brief, Safety-Kleen argues that *American Distilling Co. v. Department of Revenue*, 53 Ill. App. 3d 42 (1977), supports its claim that new and used products can be regarded as different property under the temporary storage exemption. In *American Distilling Co.*, the plaintiff distilling company appealed from a determination that its new white oak barrels, which were used to produce bourbon whiskey, were subject to use tax. *Id.* at 43-44. The undisputed facts showed that the barrels' function was "to provide flavor bodies and extracts from the wood which are ingredients of the final product," and that the barrels could only be used once, after which they became useless. *Id.* at 44. On appeal, the parties disputed whether the barrels were " 'an ingredient of an intentionally produced product or by-product of manufacturing' " and therefore not subject to use tax. *Id.* at 44-45 (quoting Ill. Rev. Stat. 1975, ch. 120, ¶ 439.2).

¶ 32    This court in *American Distilling Co.* noted that the barrels were a "required part" of the bourbon-making process, and that the barrels are so changed by their initial use that it "is illegal to attempt to use them again to make bourbon." *Id.* at 45. We also observed that the barrels were "not useless" but were "resold for other uses." *Id.* This court found that the barrels were intended to be ingredients of bourbon whiskey and that they were by-products of the manufacturing process. *Id.* We therefore concluded that "where the bourbon barrels are resold after being put to their intended use, the Department cannot collect a tax." *Id.* at 46.

¶ 33    *American Distilling Co.* is inapplicable for multiple reasons. First, the court in *American Distilling Co.* was not asked to consider the applicability of the temporary storage exemption, nor was it asked to determine whether the property at issue became a different property altogether after its initial use. More notably, however, the court in *American Distilling Co.* emphasized that after the barrels were used for their intended use, they had to be sold to be

used for other purposes. *Id.* Here, as we have stated, regardless of the changes that the virgin solvent underwent when it became "used solvent," that same solvent was nonetheless capable of undergoing multiple rounds of recycling and reuse as cleaning solvent. Thus, unlike the products in *American Distilling Co.*, the virgin solvent is capable of the same function after its initial intended use.

¶ 34    We acknowledge that a portion of the used solvent may ultimately be lost when it undergoes the recycling process, as the recycled solvent must be blended with virgin solvent to ensure that the supply of solvent remains adequate. However, Safety-Kleen has presented us with no evidence as to how much of its used solvent is never used as recycled solvent, or that this unrecycled used solvent is ever identified, separated out, or measured throughout the recycling process. As the party seeking tax exemption, Safety-Kleen carried the burden of proving the right to exemption. *Eden Retirement Center, Inc.*, 213 Ill. 2d at 289. Because there is no evidence that Safety-Kleen did, or was ever able to, identify and separate the used solvent that does not become recycled solvent, we cannot conclude that Safety-Kleen is entitled to use tax exemption as to this portion of its solvent.

¶ 35    Ultimately, as we have stated, this court has no authority to create exemption to taxation through judicial construction. *City of Chicago*, 147 Ill. 2d at 491. With that in mind, Safety-Kleen cites no legal authority supporting a finding that the temporary storage exemption can apply where a property is significantly altered by its use but ultimately refined and reused for the same activity after undergoing a recycling procedure. Any doubt that rises from this inquiry must be resolved in favor of taxation. *Horsehead Corp.*, 2019 IL 124155, ¶ 42.

¶ 36    As we previously found in *Shared Imaging*, property does not qualify for the temporary storage exemption where, after the property's "initial post-purchase storage in Illinois," the petitioner "returns the property to Illinois and engages in the same activity again." *Shared Imaging*, 2017 IL App (1st) 152817, ¶¶ 44, 46. In such a case, the petitioner's storage of the property in Illinois after the "initial post-purchase storage" constitutes a use in Illinois, and so the temporary storage exemption does not apply. *Id.* ¶ 46. Regardless of the changes that Safety-Kleen's virgin solvent undergoes when it is used and eventually recycled, Safety-Kleen effectively stores the same material—the solvent—multiple times in Illinois before using the solvent to engage in the same activity. Thus, we find the virgin solvent is not exclusively used outside of Illinois and therefore does not qualify for the temporary storage exemption. *Id.* The tax tribunal did not err in granting the Department summary judgment as to its assessment of use tax on the virgin solvent, and it did not err in denying Safety-Kleen summary judgment.

¶ 37                                     CONCLUSION
¶ 38    For the foregoing reasons, we affirm the judgment of the tax tribunal.

¶ 39    Affirmed.