2023 IL App (1st) 221518-U

No. 1-22-1518

Order filed December 26, 2023.

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| MIDWEST MEDICAL EQUIPMENT SOLUTIONS, INC., | ) ) ) | Appeal from the Illinois Independent Tax Tribunal |
| Petitioner-Appellant, | ) ) | |
| v. | ) ) ) | Nos. 17 TT 120, 19 TT 93 & 21 TT77 |
| ILLINOIS DEPARTMENT OF REVENUE and ILLINOIS INDEPENDENT TAX TRIBUNAL, | ) ) ) ) | James M. Conway Chief Administrative Law, Judge Presiding. |
| Respondents-Appellees. | ) | |

JUSTICE LAVIN delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Coghlan concurred in the judgment.

ORDER

¶ 1   *Held*:   The Illinois Independent Tax Tribunal properly entered judgment in favor of the Illinois Department of Revenue where the tax exemption for sales to governmental bodies did not apply to petitioner's sales to managed care organizations. Additionally, the tribunal properly declined to abate tax penalties imposed against petitioner.

¶ 2   This appeal arises from a final decision of the Illinois Independent Tax Tribunal (Tax

Tribunal) entering summary judgment against Midwest Medical Equipment Solutions, Inc.

(Midwest) and in favor of the Illinois Department of Revenue (Department). On appeal, Midwest asserts that the Tax Tribunal erroneously determined that Midwest's transactions did not qualify for the Sale to Governmental Body Exemption (Governmental Body Exemption) to the Illinois Retailer's Occupation Tax (ROT) (35 ILCS 120/2-5(11) (West 2012)). Midwest alternatively asserts that the tax penalties imposed were unwarranted. For the following reasons, we affirm the Tax Tribunal's decision.

¶ 3                                     I. Background.

¶ 4      Midwest is a licensed provider of durable medical equipment (DME) and provides breast pumps and nebulizers to individuals enrolled in Medicaid.[1] Historically, the Illinois Department of Healthcare and Family Services (DHFS) directly paid providers for DME. In addition, payments for specific medical services are referred to as fee-for-service payments and are determined by a schedule posted on DHFS's website. Because Midwest's sales of DME were made directly to DHFS, they were covered by the Governmental Body Exemption to the ROT.

¶ 5      In 2011, however, the State expanded its use of Managed Care Organizations (MCOs). See Pub. Act. 96-1501, § 40 (eff. Jan. 25, 2011) (adding 305 ILCS 5/5-30). MCOs are a form of HMO that establish a network of covered providers that serve those individuals enrolled in the MCOs' plans. The majority of Medicaid recipients are now enrolled in MCOs. As a result, in most instances, Midwest is reimbursed by MCOs rather than DHFS. DHFS continues to make direct payments to providers for the approximate 20% of Medicaid participants who are not required to enroll in an MCO.

¶ 6      Pertinent to this dispute, the Department audited Midwest for the failure to pay the ROT for three periods between June 2012 through April 2020, and issued Midwest three notices for a

_____

[1]We note that Midwest's fact section contains improper argument. See Rule 341(h)(6) (eff. Oct. 1, 2020).

total of approximately $411,000 in tax liability. That sum reflected taxes Midwest had withheld under the Governmental Body Exemption as well as interest and penalties.

¶ 7     Midwest subsequently filed three petitions challenging each notice of tax liability in the Tax Tribunal.[2] Midwest maintained that the sales in question were tax exempt under the Governmental Body Exemption because Midwest made those sales to MCOs, which were in turn paid by DHFS, a governmental body. In other words, Midwest took the position that DHFS was, in substance, the purchaser of the DME. The Department disagreed.

¶ 8     The evidence before the Tax Tribunal showed that DHFS pays MCOs a fixed amount per Medicaid member per month, on a "capitated" basis. In addition, the contracts between DHFS and MCOs specify that the latter are independent contractors. In turn, MCOs enter into contracts with Medicaid providers who agree to become part of the MCOs' networks. Medicaid providers and MCOs have the liberty to enter into contracts with the respective MCOs or providers of their choice. Medicaid providers must also enroll with DHFS.

¶ 9     Midwest's standard protocol involved confirming the patient's Medicaid status and coverage through the State of Illinois website database. For Medicaid recipients enrolled in MCOs, Midwest would then submit invoices to the MCOs, which would in turn reimburse Midwest. In Midwest's contracts with MCOs, Midwest agreed to charge the same prices that DHFS would pay Midwest under the fee-for-service schedule. No rule or regulation prohibits providers from raising the fees they charge MCOs, however. In other words, the providers and MCOs are not required to adopt the DHFS fee schedule in their contracts. They may negotiate.

---

[2]The tax tribunal is an independent administrative body tasked with resolving disputes between the Department and taxpayers for liability exceeding $15,000. *Horsehead Corp. v. Department of Revenue*, 2019 IL 124155, ¶¶ 24-26. In the proceedings before the Tax Tribunal, Midwest and the Department entered into a stipulation of the underlying facts.

Moreover, Midwest's contracts with MCOs prohibited Midwest from seeking payment from DHFS.

¶ 10     During the periods at issue, Midwest claimed the Governmental Body Exemption for proceeds that DHFS directly paid Midwest as well as proceeds that MCOs paid Midwest. In other words, Midwest did not pay taxes for transactions in which it was directly reimbursed by MCOs. Midwest treated its MCO reimbursement proceeds as exempt from the ROT because patients must be approved for Medicaid. Midwest did not, however, collect exemption identification numbers from MCOs.

¶ 11     Midwest moved for summary judgment, arguing that the Governmental Body Exemption excused it from paying the taxes in dispute, that the MCOs were agents of DHFS, and that the substance-over-form doctrine dictated that DHFS, a governmental body, was the true purchaser of Midwest's DME. The Department then filed a cross-motion for summary judgment, arguing that the exemption did not apply and that penalties were appropriate. With respect to tax penalties, Midwest's reply added that penalties were not warranted because Midwest acted in good faith.

¶ 12     The Tax Tribunal granted the Department's motion for summary judgment and denied Midwest's motion, finding that MCOs were not governmental bodies but merely private companies that contracted with the government. They were not DHFS's agents or conduits for funneling money from DHFS to Midwest. Instead, MCOs had separate contractual relationships with both DHFS and the providers. Additionally, the tribunal denied Midwest's request to abate the tax penalties. Midwest then filed a petition for direct administrative review in this court.

¶ 13                              II.     Analysis

¶ 14                          A. Governmental Body Exemption

¶ 15    On appeal, Midwest first asserts that the Tax Tribunal erred in granting summary judgment in the Department's favor, as Midwest was entitled to the Governmental Body Exemption to the ROT. See *Rogers v. Illinois Department of Revenue*, 2017 Ill App (1st) 151449, ¶ 30 (stating that summary judgment is warranted where the parties' pleadings, depositions, admissions and affidavits show that no genuine issue of material fact exist so that the movant is entitled to judgment as a matter of law). The parties agree that we must review this issue *de novo*. *Id.* Accordingly, we may affirm the tribunal's judgment on any basis in the record, regardless of the tribunal's reasoning. See *Amos Financial, LLC v. Szydlowski*, 2022 IL App (1st) 210046, ¶ 31.

¶ 16    Taxation is the rule, whereas exemption is the exception. *Safety-Kleen Systems, Inc. v. Department of Revenue*, 2020 IL App (1st) 191078, ¶ 18. Courts must strictly construe tax exemptions and resolve any doubts as to whether an exemption applies in favor of taxation. *Id.* Additionally, the party seeking an exemption bears the burden of proving its right to the exemption. *Id.* In determining whether an exemption applies, "we must construe all facts and debatable questions in favor of taxation." *Id.* Furthermore, because administrative regulations have the force and effect of law, rules of statutory construction apply to the construction of such regulations. *Kean v. Wal-Mart Stores, Inc.*, 235 Ill. 2d 351, 368 (2009). The most reliable indicator of the legislature's intent is the statute's language, which must be given its plain meaning. *Haage v. Zavala*, 2021 IL 125918, ¶ 44. Where a statute's language is unambiguous, we must effectuate it without adding limitations or conditions. *Kishwaukee Auto Coral, Inc., v. Department of Revenue*, 2021 IL App (1st) 200236, ¶ 16.

¶ 17    Under the ROT Act, "[a] tax is imposed upon persons engaged in the business of selling at retail tangible personal property[.]" 35 ILCS 120/2(a) (West 2012); see also 86 Ill. Adm. Code

§ 130.101 (2023). Medical appliances, such as those sold by Midwest, are taxed at the reduced rate of one percent. See 86 Ill. Adm. Code 130.311 (2022). That being said, the Governmental Body Exemption applies to "Gross receipts from proceeds from the sale of *** Personal property sold to a governmental body." 35 ILCS 120/2-5(11) (West 2012); see also 86 Ill. Admin. Code § 130.120(i) (2023). We find that the plain language of the statute unambiguously states that sale proceeds are not exempt from the ROT unless the sale was made to a governmental body.

¶ 18    This court has previously held that "governmental body," as used in the statute, does not include "agents or instrumentalities thereof." *Lombard Public Facilities Corp. v. Department of Revenue*, 378 Ill. App. 3d 921, 929-30 (2008). Stated differently, the exemption "applies to the actual purchaser and not to a future beneficiary of the purchases." *Id*. at 934. If the legislature had intended for the exclusion to involve more remote economic effects "farther down the line of economic intercourse," the legislature could have said so. See *Berwyn Lumber Co. v. Korshak*, 34 Ill. 2d 320, 323 (1966). We find this precedent to be well-reasoned. As the Department argues, there would be no end to this exemption if any sale of a component part to a company that ultimately sold a finished product to a governmental body qualified for the exemption. Such an exemption would be the exception that swallowed the rule.

¶ 19    Section 130.2080(a) of the Illinois Administrative Code reinforces the limited reach of this exemption:

> "On and after January 1, 2015, *** sales of tangible personal property made to a governmental body (federal, State, local or foreign) are exempt from the [ROT] if the governmental body has an active exemption identification number ("E-number") issued by the Department and it provides this active E-number to the retailer, who records that number instead of collecting the tax. In addition, only sales of tangible personal property

invoiced directly to and paid by governmental bodies that possess active E-numbers are exempt."[3] 86 Ill. Adm. Code § 130.2080 (2015). Accordingly, even if sales to MCOs could conceivably constitute sales to a governmental body, the exemption would not apply unless the MCOs provided an exemption identification number, something that MCOs do not possess.

¶ 20 Notwithstanding the statute's plain language, Midwest argues that limiting the exemption to actual governmental bodies will lead to an absurd result: financial hardship to Midwest. Specifically, Midwest insists that it is bound to set charges according to DHFS's fee schedule, which does not consider Midwest's obligation to pay the ROT. Yet, the unrebutted testimony of Robert Mendosa, deputy administrator for DHFS, was that providers such as Midwest were free to negotiate fees in their contracts with MCOs and were not obligated to follow DHFS's fee schedule. While Midwest concludes that it cannot as a practical matter negotiate to receive fees greater than those set forth in the schedule, Midwest has failed to develop a cohesive argument supporting that conclusion. See *Marzouki v. Najar-Marzouki*, 2014 IL App (1st) 132841, ¶ 12 (recognizing that the failure to develop an argument results in forfeiture). Even assuming Midwest correctly predicts that DME providers may stop serving Medicaid beneficiaries without the benefit of the exemption, this would not permit us to deviate from the plain language of the statute. Midwest's recourse lies with the legislature.

¶ 21 Indeed, Midwest argues that Public Act 102-700 (eff. Apr. 19, 2022) recently modified section 2-5 to specify that breast pumps are exempt from the ROT. Midwest argues that

---

[3]Prior to 2015, section 130.2080(a) stated: "Sales made to a governmental body *** are exempt from the [ROT]. Such sales are not exempt from the [ROT] unless a governmental body has an active exemption identification number issued by the Department." 86 Ill. Adm. Code § 130.2080 (2012). Thus, the regulation has at all relevant times required that the purchaser provide an exemption identification number.

"[c]learly recognizing the unjust and perverse effect that the failure to exempt breast pumps from ROT was having on providers like Midwest, the legislature took action to ensure that providers were not financially hampered in their efforts to serve Medicaid beneficiaries in Illinois." Yet, this argument arguably supports the notion that during the period in question, the legislature did not view breast pumps paid for by MCOs as being exempt from the ROT. We further observe that the legislature did not amend section 2-5(11) to specify that the Governmental Body Exemption applies to a governmental body's agents, despite the existence of caselaw excluding sales to such agents from exemption. Public Act 102-700 does not show that the legislature previously intended for sales to MCOs to be exempt. *Cf. In re Detention of Lieberman*, 201 Ill. 2d 300, 321-22 (2000) (recognizing that the amendment of an unambiguous statute usually indicates a purpose to change the law); *People ex rel. Ryan v. Agpro, Inc.*, 214 Ill. 2d 222 (2005) (stating that the supreme court has "never held that a subsequent amendment may replace the plain meaning as the best evidence of the legislature's original intent"). We must allow the legislature to legislate.

¶ 22    Here, it is undisputed that Midwest's sales were made to MCOs, not governmental bodies. Accordingly, those sales are not encompassed within the Governmental Body Exemption to the ROT.

¶ 23    Midwest nonetheless argues that the substance-over-form doctrine dictates that DHFS was the true purchaser of Midwest's DME.

¶ 24    The substance-over-form doctrine has been universally accepted. See *JI Aviation, Inc. v. Department of Revenue*, 335 Ill. App. 3d 905, 918 (2002). Under that doctrine, a transaction's tax consequences are governed by the underlying substance of the transaction, not its legal form. *Exelon Corporation v. Commissioner of Internal Revenue*, 906 F. 3d 513, 523 (7th Cir. 2018).

Courts look to the objective economic realities of a transaction, not the particular form used by the parties. *Id*. (citing *Frank Lyon Co. v. United States*, 435 U.S. 561, 573 (1978)). The substance-over-form doctrine does not apply to all tax situations, however, and we must interpret and apply the unambiguous, plain language of a statute as it is written. See *Shakman v. Department of Revenue*, 2019 IL App (1st) 182197, ¶¶ 54-55.

¶ 25    Here, DHFS contracted with MCOs to provide Medicaid recipients with managed care plans. DME is but one inseverable component of those plans, and is a benefit that not every Medicaid recipient will even use. Additionally, DHFS pays MCOs on a capacitated basis, not a fixed fee for a particular product. In contrast, Midwest sells DME, not managed care plans. Because the product that Midwest sells the MCOs is different from the product that MCOs sell to DHFS, we categorically reject Midwest's assertion that DHFS is in substance the purchaser of the DME. *Cf. JI Aviation, Inc. v. Department of Revenue*, 335 Ill. App. 3d 905, 920-21 (2002) (finding for tax purposes that the "purchaser" was a mere conduit and intermediary where it was at all times required to convey title to another party).

¶ 26    Midwest also argues that the substance of DHFS's relationships with the MCOs showed they had apparent agency to act on DHFS's behalf. We adhere, however, to this court's well-reasoned, prior determination that "governmental body" does not include "agents or instrumentalities thereof." *Lombard Public Facilities Corp.*, 378 Ill. App. 3d at 929-30; see also *Berwyn Lumber Co.*, 34 Ill. 2d at 322-23 (finding where dealers sold lumber to contractors who used the lumber in construction contracts with exempt organizations that the contractors were not agents of the exempt organizations). In any event, Midwest cannot establish that the MCOs acted as DHFS's agents.

¶ 27    "The tests of agency are whether the principal has authority to control the method or manner of accomplishing a task by the agent and whether the agent has authority to subject the principal to liability." *Jackson v. Callan Publishing, Inc.*, 2021 IL App (1st) 191458, ¶ 190. In addition, an agent's authority may be actual or apparent. *Cove Management v. AFLAC, Inc.*, 2013 IL App (1st) 120884, ¶ 23. Apparent authority exists where a principal through conduct or words, gives a third party the reasonable impression that the principal's agent has the authority to act on the principal's behalf. *Gambino v. Boulevard Mortgage Corp.*, 398 Ill. App. 3d 21, 56 (2009). Thus, apparent authority requires that (1) the principal gave its consent or knowingly acquiesced in its agent's exercise of authority; (2) a third party, due to his knowledge of the facts, held a good-faith belief that the agent possessed authority; and (3) the third party relied on the agent's apparent authority to his detriment. *Id*. One party's right to control the other's work, however, is the predominant factor in determining whether an agency relationship exists. *Union Planters Bank, N.A. v. FT Mortgage Companies*, 341 Ill App. 3d 921, 928 (2003).

¶ 28    Midwest argues that the MCOs had apparent authority to act as DHFS's agents because those parties' contracts included approximately 73 pages of rules governing MCOs' operations. Yet, Midwest's brief cites only one page. This argument fails to comport with Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020), which requires that the appellant's brief contains citations to "the pages of the record relied on." We decline to scour through 73 pages. See *Cabrera v. First National Bank of Wheaton*, 324 Ill. App. 3d 85, 93 (2001) (finding that the plaintiff's failure to support its conclusory statement with citation to the record resulted in forfeiture); see also *Ellis v. Flannery*, 2021 IL App (1st) 201096, ¶ 8.

¶ 29    In any event, the single page cited essentially requires the MCOs to comply with the law, notify DHFS of deviations from contract terms, enable enrollees to obtain second opinions and

refrain from advising enrollees to seek public resources for things that the MCOs are already being paid to provide. This falls short of showing that DHFS has an ongoing right to control *how* Midwest performs its work. Thus, Midwest's conclusory assertion that DHFS controlled the MCO is insufficient. Additionally, the record shows that DHFS is an outsider to the MCOs' contracts with providers. Furthermore, contractual language specifies that MCOs are not DHFS's agents and will indemnify and hold DHFS harmless from liability. *Cf. Hiatt v. Western Plastics, Inc.*, 2014 IL App (2d) 140178, ¶ 80 (stating that the parties' declaration is not controlling where their conduct otherwise shows that an agency relationship exists). As a result, Midwest could not have possessed a good faith belief that MCOs were agents of DHFS.

¶ 30    Construing the record in the light most favorable to Midwest, we find that there is no genuine issue of material fact, that Midwest was not entitled to the Governmental Body Exemption, and that the Department was entitled to summary judgment.

¶ 31                                B. Abatement

¶ 32    Next, Midwest asserts that the Tax Tribunal erroneously upheld the tax penalties assessed against Midwest. The parties dispute whether Midwest forfeited this issue by failing to raise it in its motion for summary judgment. In any event, we find no error. See *Horsehead Corp. v. Department of Revenue*, 2019 IL 124155, ¶ 46 (reviewing abatement under the manifest weight of the evidence standard).

¶ 33    "If any return or amended return is prepared negligently, but without intent to defraud, and filed, *** a penalty shall be imposed in an amount equal to 20% of any resulting deficiency." 35 ILCS 735/3-5(a) (West 2022). In addition, "[n]egligence includes any failure to make a reasonable attempt to comply with the provisions of any tax Act and includes careless, reckless, or intentional disregard of the law or regulations." 35 ILCS 735/3-5(a) (West 2022).

Conversely, "[n]o penalty shall be imposed under this Section if it is shown that failure to comply with the tax Act is due to reasonable cause." 35 ILCS 735/3-5(c) (West 2022).

¶ 34    Section 3-8 similarly states that penalties will not be imposed "if the taxpayer shows that his failure to file a return or pay tax at the required time was due to reasonable cause." 35 ILCS 735/3-8 (West 2022). Reasonable cause is determined according to the Department's rules and regulations on a case-by-case basis. 35 ILCS 735/3-8 (West 2022). That being said, the most important factor in deciding whether a penalty should be abated is "the extent to which the taxpayer made a good faith effort to determine the proper tax liability and to file returns and pay the proper liability in a timely fashion." 86 Ill. Adm. Code § 700.400(b) (2019). A taxpayer is considered to have made a good faith effort if he "exercised ordinary business care and prudence." 86 Ill. Adm. Code § 700.400(c) (2019). In turn, determining whether the taxpayer exercised such care and prudence depends on "the clarity of the law or its interpretation and the taxpayer's experience, knowledge, and education." 86 Ill. Adm. Code § 700.400(c) (2019).

¶ 35    We have already found that the plain, unambiguous language of the Governmental Body Exemption shows it does not apply to Midwest's sales of DME to MCOs, which are not governmental bodies. Prior case law confirms the plain language of the statute. See *Lombard Public Facilities Corp.*, 378 Ill. App. 3d at 929-30, 934; *Berwyn Lumber Co.*, 34 Ill. 2d at 323. Furthermore, Midwest has identified no case law suggesting a contrary construction of the statute.

¶ 36    Midwest maintains that penalties should be abated because no case has specifically addressed whether DME sales to MCOs are exempt from ROT. The Tax Tribunal, however, properly rejected Midwest's attempt to define issues so narrowly, which would permit many taxpayers to claim that a specific set of transactions was unique and not addressed by case law.

The tribunal stated, "MCOs are just like any other company that contracts with the State and then separately contracts with unrelated third-party vendors to provide certain tangible personal property for which the government body, upstream from the vendors, can be said to be the indirectly source of payment that the vendors receive." We agree. Midwest's failure to consider the tax implications from the State's transition from DHFS reimbursement to MCO reimbursement does not render Midwest's circumstances unique. While Midwest suggests that it did not voluntarily enter into contracts with MCOs, we are unpersuaded by Midwest's attempt to minimize its responsibility in this matter.

¶ 37    As previously stated, the Illinois Administrative Code has at all times required that a purchaser provide an exemption identification number in order for the Government Body Exemption to apply. 86 Ill. Adm. Code §130.2080 (2012); 86 Ill. Adm. Code § 130.2080 (2015). This put Midwest on notice that it was insufficient to merely confirm that the patient was enrolled in Medicaid and that the exemption would not apply to payments from MCOs unless they provided an exemption identification number. Had Midwest requested exemption identification numbers from MCOs, Midwest could have had no reasonable doubt that the exemption did not apply.

¶ 38    Under these circumstances, we find that the Tax Tribunal's decision to uphold the tax penalties imposed by the Department was not against the manifest weight of the evidence. The tribunal was not required to find that Midwest withheld tax payments in good faith and with reasonable cause.

¶ 39                              III. Conclusion

¶ 40    The Tax Tribunal properly entered summary judgment in favor of the Department and against Midwest where the Governmental Body Exemption to the ROT clearly did not apply to

proceedings from sales to MCOs. In addition, the tribunal appropriately upheld the Department's imposition of tax penalties.

¶ 41    For the foregoing reasons, we affirm the Tax Tribunal's judgment.

¶ 42    Affirmed.